UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
INTERACTIVE TRACKING SYSTEMS, INC.,

        Plaintiff

    v.                                      CIVIL ACTION NO.:
                                            08-10101-EFH

ARTAFACT LLC.,
        Defendant.
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# **MEMORANDUM AND ORDER**

June 1, 2011

HARRINGTON, S.D.J.

      This matter comes before the Court for patent claim construction following a Markman hearing. The action involves U.S. Patent No. 6,256,663 (the "'663 patent"), which details a system for conducting focus groups using remotely located participants communicating over a computer network. Plaintiff, Interactive Tracking Systems, Inc. ("Itracks"), owns the patent and alleges that Defendant, Artafact LLC, committed infringement with its online focus group products.

      Claim construction is an issue of law for the Court to decide. Markman v. West View Instruments, Inc., 517 U.S. 370, 372 (1996). In construing a claim, the Court should give the words of the claim their "ordinary and customary meaning," as understood by "a person of ordinary skill in the art in question." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed.Cir.2005). In so doing, the Court may look to other sources for assistance in construing a claim since terms may have "a particular meaning in a field of art" or otherwise be used

idiosyncratically.  Id. at 1314.

One such source is the words of the claims themselves.  Id.  Claim terms are normally used consistently throughout the patent and the meaning of the term in one claim is likely the meaning of that same term in another.  Id.  The Court should also read the claim "in the context of the entire patent, including the specification."  Id. at 1315.  In addition, the Court should look at the patent's prosecution history.  Id. at 1317.  If a term's meaning is ambiguous in light of all of this intrinsic evidence, the Court may also analyze extrinsic evidence, including dictionaries, treatises, and expert statements.  Id. at 1318-19, 1322-24.

As the '663 patent specification explains, the invention seeks to mimic, through electronic communications or "chat messages," the traditional focus group format, whereby a group of respondents (i.e. members of the public that represent the target demographic) gather in the same room, a moderator guides the group through a discussion which probes attitudes concerning the clients' proposed products or services, and the clients observe the discussion from behind a one-way mirror.

The instant dispute concerns two aspects of the invention.  The first aspect relates to what is prevented from being displayed on the respondent's computer interface.  With respect to that aspect, the parties contest the meaning of two phrases that are set forth in claims 1 and 10.  The contested phrases are as follows:

1. "said respondent computer interface for not displaying client chat messages and moderator chat messages";

2. "displaying said respondent chat messages on said respondent computer display device and blocking display of client and moderator chat messages by said respondent computer

interface." '663 Patent col.9 ll.46-48, col. 11 ll.21-24.

Plaintiff Itracks asserts that the contested phrases mean that the respondent computer interface does not display the client or moderator chat messages generated by the client or the moderator, or in other words, the messages that comprise the discussion between clients and/or moderators. Defendant Artafact contends that the phrases mean that the respondent's computer interface does not display the chat messages sent from the respondent to the moderator and client. The Court agrees with Plaintiff Itracks's proposed construction.

The patent seeks to implement "at least two separate chat discussions to be conducted simultaneously between the three classes of focus group participants . . . ." '663 Patent col.2 ll.23-25. The patent claims and specification clearly establishes that each of the two chat discussions are comprised of separate sets of chat messages. The first discussion is comprised of what are termed "client and moderator chat messages," or some variation of that term.[1] The second chat discussion is comprised of so-called "respondent chat messages." The two sets of messages are intended to be analogous to the two discussions that occur in the traditional focus group scenario, that is, the discussion between respondents and/or moderators occurring within a room and the discussion between the clients and/or moderator occurring outside the room on the other side of a one-way mirror. The patent claims, therefore, articulate which participants are allowed to view and/or generate messages for each discussion in a manner analogous to the traditional scenario.

Turning now to the specific matter at hand, only clients and moderators are allowed to

---

[1] The Court concludes that the terms "client chat messages," "client and moderator chat messages" and "client chat messages and moderator chat messages" are used interchangeably throughout the patent to refer to the same set of messages.

generate so-called "client and moderator chat messages." As claim 1 explicitly states, such messages are "generated by said at least one client and said at least one moderator." '663 Patent col.9 ll.58-59. Additionally, the client's and moderator's computer interface allows for the input of such messages, while the respondent's interface does not. Thus, "client and moderator chat messages" make up the discussion in which clients and/or moderators participate and in which respondents do not.

The ordinary and customary meaning of the disputed phrases is that the respondent's computer interface does not display the "client and moderator chat messages." In other words, the respondent's computer interface does not display the messages that comprise the discussion between clients and/or moderators. This construction is consistent with the entire patent and the purpose of the invention, which, as to reiterate, is to provide an electronic analog to the one-way mirror segregating respondents from client and moderator discussions.[2]

The Court's construction does not, however, mean that *all* chat messages that are

---

[2] After the defendant requested a reexamination, the patent examiner made the following statement in his Notice of Intent to Issue an Ex Parte Reexamination Certificate:

> The Third Party requester asserts the respective references [to prior art], . . . teaches the feature of 'private channels' or 'private messaging,' and thus, said feature suggests the argued element . . . Let us assume, arguendo, that said feature of 'private channels' or 'private messaging' teaches the argued element such *as blocking chat messages (i.e., respondent chat message) from non-private group (i.e., from moderator and client)*. (Emphasis added).

Defendant Artafact contends that the italicized portion of the statement establishes that the phrases in dispute refer to messages that are sent from the respondent to the client or moderator. The Court disagrees. While the examiner's statement is somewhat ambiguous, the Court does not necessarily read the statement to support Artafact's position. Furthermore, the Court will not attempt to decipher what exactly was meant by the statement where the clear language of the claims conclusively establish the customary and ordinary meaning of the disputed phrases.

generated by moderators are withheld from the respondents. Rather, the above phrases only mean that those messages constituting the discussion between moderators and/or clients are withheld from the respondent. Moderators may still generate so-called "respondent chat messages" which are displayed to the respondents.

Accordingly, the Court rules that the disputed phrases mean that the respondent computer interface does not display the client or moderator chat messages generated by the client or the moderator, or in other words, the messages that comprise the discussions between clients and/or moderators.

The second aspect in dispute concerns the following phrase in claim 1: "a moderator computer interface for a moderator computer, said moderator computer interface for displaying, on a *client display* associated with each moderator computer . . . ." '663 Patent col.2 ll.23-26 (emphasis added). Plaintiff Itracks contends that the term "client display" is a typographical error that should instead read "moderator display." Defendant Artafact contends that the language is correct as written and means that the moderator computer must be connected to a client display.

"A district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." Novo Indus., L.P. v. Micro Molds Corp., 350 F.3d 1348, 1357 (Fed.Cir.2003). This determination "must be made from the point of view of one skilled in the art." Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp., 587 F.3d 1339, 1353 (Fed.Cir.2009).

The Court concludes that the phrase "client display" should be corrected to read "moderator display." In considering the claim language and the specification, the inclusion of the

5

word "client" is an obvious typographical error.  The description in the specification and the exemplary drawing of the invention both illustrate that the moderator display is associated with the moderator computer.  Furthermore, Claim 1 sets forth parallel descriptions of the client and respondent computers.  In comparing these parallel descriptions, it is apparent that the term "client display" is out of place and that the description of the moderator computer should read consistently with the other descriptions.  It also indicates that the error was likely caused when the parallel language was copied over during the patent's drafting.

Furthermore, the prosecution history does not suggest a different interpretation.  In fact, the interpretation is consistent with Defendant Artafact's Request for Reexamination in which it recognized the error by stating,

> This element does not make sense as written. Based on the wording of elements 1.7 and 1.22, [Artafact] believes the term "client display" in this element was intended to read as "moderator display," as element 1.7 associates the "respondent display" with the "respondent computer," and element 1.22 associates the "client display" with the "client computer."

Accordingly, the term "client display" is corrected to read "moderator display."

SO ORDERED.

/s/ Edward F. Harrington  
EDWARD F. HARRINGTON-  
United States Senior District Judge